The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Beau Chandler,
Plaintiff,

v.

O.M.A. Construction, Inc.,
Defendant.

NO. 2:23-cv-815

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This matter comes before the Court on a Motion for Summary Judgment, filed by Defendant O.M.A. Construction, Inc. ("OMA"). Dkt. No. 18. OMA seeks judgment in its favor on Plaintiff Beau Chandler's state and federal claims of hostile work environment, race discrimination, and retaliation, and his state-law claims of breach of contract and intentional and negligent infliction of emotional distress. Having reviewed the briefs filed in support of and opposition to the motion, the declarations and exhibits filed in support thereof, and the remainder of the record, the Court finds and rules as follows.

## II.    BACKGROUND

### A.  Plaintiff's Employment and Safety Record with OMA

Beginning in September 2017, Plaintiff was employed as a commercial dump truck driver

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 1

at OMA, a construction contractor located in Maple Valley, Washington. O'Young Decl., ¶ 2; Akers Decl., ¶ 4. OMA employs approximately 60 union truck drivers, who are subject to a collective bargaining agreement ("CBA") and represented by Teamsters 174. Akers Decl., ¶ 4; Ex. A. That CBA provides, among other things, that OMA may terminate a driver after three written warnings within a 12-month period. Akers Decl., ¶ 10; Ex. A.

OMA terminated Chandler on May 4, 2018, based on three written warnings he had received in the previous four months. The first was related to a speeding ticket he received on January 3, 2018, while driving an OMA truck. Akers Decl., ¶ 5. The second arose out of Chandler's failure on April 23, 2018 to complete either a post trip driver-vehicle inspection report or a pre-inspection of the truck the next day, procedures that are mandated by the Federal Motor Carrier Safety Administration. *Id*., ¶ 6. The third warning resulted from two complaints received from the public on May 1, 2018, concerning two separate incidents. Chandler (1) failed to use the left-hand turn lane before making a left turn onto the freeway; and (2) failed to stop at a red light, driving in front of an oncoming car. *Id*., ¶ 7. Although he offered explanations, Plaintiff has not disputed that these incidents occurred. He grieved his termination with the union, requested a "second chance," and was rehired in June 2018. *Id*., ¶ 8.

After he was rehired, according to OMA, Chandler "continued to struggle with safety." Akers Decl., ¶ 9. In November 2018, OMA alleges Chandler was involved in two incidents involving collisions with large concrete "ecology blocks." Feider Decl., Ex. B, Chandler Dep., Exs. 42, 43. The second incident involved Plaintiff hitting a guardrail on the viaduct. He does not deny that this incident occurred, and caused significant damage. Although he claims he was avoiding a metro bus encroaching on his lane, video footage of the incident indicates the bus did

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 2

not enter his lane. Chandler Dep., 205. In October 2019, he hit "something on the right side of the truck," destroying two tires. Chandler Dep., Ex. 43. In the most serious recorded incident, in May 2020, Chandler rolled his dump truck over on a freeway exit ramp. Akers Decl., ¶ 9; Chandler Dep., Ex. 49. The cab of his truck was crushed, Chandler was ticketed for speeding, and the incident caused $40,000 in damages. *Id*. As a consequence, Chandler was placed on a three-day suspension. *Id*. He claims that the "truck rolling over was proved not to be my fault" because the truck had been improperly loaded, but has not supplied any evidence that expands upon or would support this claim. Chandler Decl., ¶ 11.

On August 19, 2021, Chandler was observed parked in an OMA truck on the side of the road. Chandler Dep., Ex. 5; Lingley Decl., ¶ 5. According to OMA, because it charges customers for pickup and delivery time, a roadside stop could result in overbilling a customer. Cobun Decl. ¶ 6. When confronted by a fellow employee, Plaintiff agreed to move on, but was observed using his brakes on a downhill in an unsafe manner. *Id*. Plaintiff was called in to a meeting with his supervisor, Tom Cobun, to review the incident. What occurred during this meeting would become the subject of a charge that Chandler later filed with the EEOC, discussed below. *See infra*, § II.B. On November 16, 2021, a member of the public reported that an OMA driver, who turned out to be Chandler, ran a stop sign and almost hit another vehicle. Chandler Dep., Exs. 58, 60.

During this time period, Plaintiff also received written warnings for failing to follow a number of company rules and procedures. For example, he "failed to submit a load-ticket on time" (November 2, 2021); "clocked in early and left the yard before his dispatch causing a backup at a customer's project site" (November 30, 2021); and "entered the mechanics' shop after OMA had directed drivers not to enter" (May 26, 2022). Chandler Dep. 273:10-22, Ex. 57;

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 3

Chandler Dep. 284:10-21, Ex. 61; Chandler Dep. 291:7-21, Ex. 63. Chandler claims that some of these incidents did not occur as alleged, were not his fault, or were also committed by others who were not written up; but apart from his vague and conclusory declaration testimony, submits no additional evidentiary support for these denials. *See, e.g.*, Chandler Decl., ¶ 4 ("Mr. Cobun has alleged that I was very hard on my truck compared to any other driver at O.M.A. I wasn't the only driver driving multiple vehicles and multiple drivers were driving the trucks I drove.").

On June 8, 2022, Chandler failed to stop at a state-mandated weigh station, later claiming it was hard to see, and was given a citation by a Washington State Patrol officer. Chandler Dep., 293:5- 294:16, Ex. 64. OMA put Chandler on suspension to investigate the incident. The Teamsters intervened on Chandler's behalf, representing that Chandler would resign if OMA agreed not to contest unemployment benefits or "make any negative comments about him to future employers." Akers Decl., ¶ 11. OMA agreed, and Chandler submitted his resignation on June 13, 2022. Chandler Dep., Ex. 65.

### B.  Plaintiff's Grievances and Complaints to Teamsters, and EEOC Charge

Chandler alleges that over the course of his employment, he submitted several grievances and complaints to his union. For example, Plaintiff alleges that he and six other drivers sent a letter to their union official, alleging discriminatory treatment at OMA. Chandler Decl., ¶ 5. Plaintiff alleges the letter was dated June 18, 2021, but the only letter in the record bearing a resemblance to Plaintiff's description is dated March 1, 2021. *Id*.; Chandler Dep., Ex. 84.[1] That letter was filed anonymously, "From: OMA Construction Drivers." *Id*. In any event, Plaintiff claims that the letter specifically alleges incidents that related to him, although nothing in the

---

[1] In his declaration, Chandler repeatedly cites exhibits and pages in his deposition that have not been submitted into the record. Obviously, such citations cannot, on their own, be considered evidence.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 4

letter itself makes that evident, nor does Plaintiff explain which incidents, or how they could be

connected to him.[2] The letter alleged, among other things, that OMA was not complying with

"terms as bargained for in our union contract"; that "[s]eniority drivers are given less assignments

and priority than new hires"; that "[n]ew company vehicles are withheld from certain drivers and

provided to non-minority drivers"; and that "[c]ertain Administrative office staff have

demonstrated a distinct hostel [*sic*] level of treatment and attitude towards drivers not displayed

towards other non-minority drivers." *Id*. That letter was forwarded to Carl Gasca, OMA's drivers'

union representative. There is no evidence in the record that anyone at OMA was aware that

Plaintiff was involved in the drafting of this letter, or that he may have been the subject of its

complaints.[3]

Plaintiff also claims that he made reports—to the union, to EEOC, and/or to OMA—on

several other occasions. Several such alleged reports concern the meeting, referenced above, that

he had on or about August 19, 2021 with Cobun, after the parking and improper braking incident.

Plaintiff alleges that in that meeting, Cobun and another employee present, Mike Lingley, used

racial slurs, demeaning language, and intimidation. Chandler Decl., ¶¶ 12, 21-28. He claims the

meeting went on for 45 minutes, and that afterwards he was "diagnosed with PTSD and major

depressive disorder leaving me disabled and unable to work from 08/19/2021 to 10/07/2021."

Chandler Decl., ¶28. He claims that he "reported this to Carl Gasca the union official on or about

08/20/2021." *Id*. It is not clear from the record whether by "this" Plaintiff means he reported the

meeting, or reported information about his diagnosis (or both), and Plaintiff has not submitted any

---

[2] Plaintiff also asserts "Mr. Chandler's name was specifically referenced in the letter," which is a patent falsehood. Pl.'s Opp. at 15; *see* Ex.84 to Chandler Dep.
[3] Defendant claims, and Plaintiff has not denied, that approximately half of OMA's 60 drivers are African-American. Akers Decl., ¶ 3.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

evidence, other than this vague testimony, supporting either the alleged diagnosis, or his report to the union about the meeting. Plaintiff also alleges he reported the incident to the Washington State Department of Labor and Industries, although again has not submitted evidence—apart from his declaration—of such reporting. Chandler Decl., ¶ 15.

Plaintiff also alleges that he reported over half a dozen incidents of discrimination, retaliation, and harassment to EEOC, including retaliation "through a false accusation of insubordination," (08/27/2021); "by the intentional removal of documents to create a false paper trail of write ups for termination," (09/09/2021 & 02/10/2022); and "O.M.A construction escorted me to an illegal observed reasonable cause and a second random drug test," (04/20/2022). *Id.* Again, however, Chandler has not submitted to the Court any documentation or other evidence of these alleged reports, or provided additional detail about the incidents.[4]

On April 11, 2022, Chandler filed a Charge of Discrimination against OMA with the EEOC. *See* Chandler Dep. Ex. 70. In it, he alleged the following:

> I was hired by the OMA Construction Inc., hereinafter Respondent, in Maple Valley, WA in or around October of 2017. I have performed the duties of my assigned job title, Driver, in a satisfactory manner. During a meeting in or around August 19, 2021, my supervisor John Cobun and an employee, Michael Lingley, called me racial slurs, repeatedly insulted my intelligence, and made comments about my age. The day after the incident, I filed a complaint about the harassment through my union in or around August 20, 2021, and I have experienced retaliation by Respondent as a result of that complaint. For example, in or around January 2022, Respondent gave newer vehicles to white employees, but I was placed back in the old truck I started out with in 2017. In or around January 28, 2022, Respondent disciplined me for missing a load ticket in my paperwork. However, I believe this is pretext for discrimination in that I had actually submitted all my load tickets that day. I believe I have been subjected to unequal

---

[4] Plaintiff cites the EEOC "Right to Sue" letter, dated March , 2022, Ex. 1 to Compl. That letter, however, does not reference any of these (or any other) incidents specifically. Plaintiff has submitted two declarations of fellow former OMA drivers. *See* Dkt. Nos. 27 and 28. These declarations were submitted after the deadline for Plaintiff's response to Defendant's motion, however, without explanation or request for leave to file them late. They have therefore not been considered by the Court in resolution of this motion.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

terms and conditions of employment, discipline, and/or harassment, because of my race (Black/African-American), age (42), color, and/or in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and/or the Age Discrimination in Employment Act of 1967, as amended.

On or about June 13, 2022, days after his citation for failing to stop at a weigh station, Chandler resigned. He claims he was forced to do so, presumably to avoid being fired. Chandler Decl., ¶ 19. In early 2023, EEOC dismissed his April 11, 2022 charge and issued a right-to-sue letter on March 6, 2023. Plaintiff timely filed the instant lawsuit on May 31, 2023.

## III.    DISCUSSION

### A.  Standard for Summary Judgment

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Title VII of the Civil Rights Act of 194 and the Washington Law Against Discrimination make it unlawful for an employer to discriminate on the basis of several protected classes,

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1    including race. 42 U.S.C. § 2000e–2(a)(1); RCW § 49.60.180. "Washington courts often look to

2    federal case law on Title VII when interpreting the WLAD"). *Blackburn v. State*, 375 P.3d 1076,

3    1080 (Wash. 2016).

4    **B.  Race Discrimination/Disparate Treatment Claims**

5    To establish a prima facie case of race discrimination under Title VII, a plaintiff must

6    show that (1) he is a member of a protected class, (2) he performed his job satisfactorily, (3) he

7    suffered an adverse employment action, and (4) the defendant treated him differently from a

8    similarly-situated employee who does not belong to the same protected class. *See Cornwell v.*

9    *Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).[5] If the plaintiff establishes a

10   prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory

11   reason for its action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). If the

12   defendant does so, the plaintiff must then demonstrate that the reason asserted by the defendant is

13   mere pretext. *See id.*

14   OMA does not deny that Chandler, who is Black, was a member of a protected class. It

15   argues his discrimination claims must fail, however, because he cannot establish any of the other

16   elements of his prima facie case. First, OMA argues that Chandler was not performing his job

17   satisfactorily. In support of this argument, Defendant cites Plaintiff's 18 written warnings,

18   received over the course of his approximate five years of employment. Def.'s MSJ at 13. While

19   Plaintiff has denied (without any evidentiary support apart from his own testimony) that he

20   committed some of the claimed infractions, and attempts to provide explanations and excuses for

21

22   _____

     [5] Similarly, under the WLAD, the plaintiff must show that: (1) he belongs to a protected class; (2) he was treated
     less favorably in the terms or conditions of his employment (3) than a similarly situated, non-protected employee,

23   and (4) the plaintiff and the non-protected comparator were doing substantially the same work. *See Washington v.*
     *Boeing Co.*, 19 P.3d 1041, 1048 (Wash. Ct. App. 2000).

24   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT

25   - 8

others, the majority remain uncontested. Indeed, nowhere in his opposition to Defendant's motion does Plaintiff assert that he was performing his job satisfactorily, and in fact essentially concedes that he was not. Instead, he argues that "[t]he fact that O.M.A. has argued that performance or safety issues existed does not negate liability if Mr. Cobun or others . . . also had discriminatory animus mixed in with other motives that may or may not have some basis in fact." Pl.'s Opp. at 13-14; *see also id.* at 14 ("Plaintiff's alleged record of driving infractions or poor driving habits is not dispositive if race was a factor in removing Mr. Chandler by threatening him with termination if he did not resign."). This is an incorrect statement of the law; the burden of demonstrating satisfactory job performance is an essential element of a plaintiff's prima facie case, and Plaintiff has failed to meet this burden. *See Jackson v. Foodland Super Mkt., Ltd.*, 958 F. Supp. 2d 1133, 1139–40 (D. Haw. 2013) ("A plaintiff who violates company policy and fails to improve her performance despite a warning has not demonstrated satisfactory performance.") (citing *Diaz v. Eagle Produce Ltd. P'ship,* 521 F.3d 1201, 1208 (9th Cir.2008)). For this reason alone, Defendant is entitled to judgment on Plaintiff's racial discrimination claims.

Second, OMA argues that Plaintiff has failed to show that he suffered any adverse employment action. The only arguably cognizable adverse action Plaintiff claims is that in June 2022, he was forced to resign "in lieu of termination." Chandler Decl., ¶ 19. Other than the testimony of Plaintiff—who does not claim to have had any first-hand knowledge—there is no evidence in the record that Defendant had threatened or intended to terminate him; as the record stands, Plaintiff's resignation was entirely by choice. Even if Plaintiff's resignation/constructive termination could be construed as an adverse employment action, however, this action was not (and could not have been) included in Plaintiff's April 11, 2022 EEOC charge, which had been

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 9

filed several months *earlier*. *See* Chandler Dep., Ex. 70. OMA argues that Plaintiff accordingly

failed to exhaust his administrative remedies as to his claim of discriminatory termination. An

uncharged discriminatory layoff may relate back to other allegations in an EEOC charge if the

layoff "was 'like and reasonably related'" to allegations that were included in the charge.

*Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973). Plaintiff fails,

however, to argue that his termination was "like and related" to the subject of his EEOC charge.

As quoted above, that charge concerned the August 2021 meeting with Tom Coburn—who

nowhere is alleged to have effected or caused Plaintiff's termination—and alleged retaliation for

having reported that meeting. Plaintiff does not address, let alone explain, how his resignation

could be construed as "like or reasonably related" to an event that took place nearly a year earlier.

For this failure to demonstrate a legally cognizable adverse employment action as well, his

racially motivated termination claims must fail.

Third, while Plaintiff has not provided admissible, specific evidence of a single similarly

situated employee outside his protected class who was treated more favorably than he was,

Defendant has submitted evidence of multiple disciplinary actions taken against "Caucasian"

employees.[6] *See* Feider Decl., Exs. D-H. For this reason as well, Plaintiff has failed to establish

his prima facie case of racial discrimination.

Even if Plaintiff had made out a prima facie case at this stage, Defendant has submitted

ample evidence that Plaintiff's purportedly constructive termination was for legitimate,

nondiscriminatory reasons. As outlined above, Plaintiff had committed multiple infractions

---

[6] Plaintiff testifies that the anonymous grievance he allegedly submitted to his union concerned "unequal disciplinary action taken against an African American and no disciplinary action taken against David Swanson a Caucasian for similar incidents." Chandler Decl., ¶ 5. The only letter to the union in the record, however, makes no mention of a David Swanson, nor is there any evidence that he was or was not disciplined, nor has Plaintiff provided any further substantiating evidence or details regarding this alleged incident.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1  resulting in written warnings, well within the twelve months preceding his allegedly coerced

2  resignation, as required under the CBA, justifying his termination (constructive or otherwise).

3  Akers Decl. ¶ 10, Ex. A.

4       Finally, there is no evidence in the record that these legitimate, non-discriminatory reasons

5  for Plaintiff's putative termination were pretextual. Once an employer has proffered evidence of

6  nondiscriminatory grounds for termination, as OMA has done here, a plaintiff may avoid

7  summary judgment by demonstrating pretext in two ways: either "(1) indirectly, by showing that

8  the employer's proffered explanation is "unworthy of credence" because it is internally

9  inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination

10  more likely motivated the employer." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225

11  F.3d 1115, 1127 (9th Cir. 2000). A plaintiff cannot prevail at the pretext stage, however, by

12  producing only "'uncorroborated and self-serving' testimony." *Opara v. Yellen,* 57 F.4th 709, 726

13  (9th Cir. 2023) (citation omitted). Yet this is the only kind of evidence in the record that would

14  even arguably support Plaintiff's claim that OMA's grounds for "forcing" his resignation were

15  pretextual. For this reason as well, Plaintiff's racial discrimination claim is dismissed.

16      **C.  Retaliation Claim**

17       Both Title VII and the WLAD prohibit an employer from retaliating against an employee

18  who engages in protected activities. *See* 42 U.S.C. § 2000e-5; RCW § 49.60.210. To prevail on a

19  retaliation claim under either statute, a plaintiff must show (1) that he was engaged in a protected

20  activity; (2) that he suffered an adverse employment action; and (3) and that there is a causal

21  connection between the protected activity and the adverse employment action. *Elvig v. Calvin*

22  *Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004); *Lodis v. Corbis Holdings, Inc.*, 292 P.3d

24  ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

25    - 11

779, 786 (Wn. App. 2013). To establish causation under Title VII, a plaintiff must show that his protected activity was a "but-for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2521 (2013). Under the WLAD, a plaintiff has to show that the protected activity was a "substantial factor" in the employer's decision to take the adverse employment action. *Allison v. Housing Auth. of City of Seattle,* 821 P.2d 34, 42–43 (1991).

Plaintiff's retaliation claim fails because he cannot demonstrate that OMA was even aware of any protected activity in which he had engaged, let alone establish a causal link between such activity and an adverse employment action. Plaintiff has claimed in conclusory fashion that he made "multiple O.M.A. incident reports," but does not provide any substantiating details, or supporting evidence other than this vague testimony. Chandler Decl., ¶ 20. While Plaintiff has claimed he made several reports to the *union*, the evidence in the record demonstrates that only one of these complaints was passed on to OMA. Akers Decl., ¶ 12. That complaint was about a confrontation between Plaintiff and Daniel Weaver, a fellow employee, and did not include any allegations concerning race. The complaint was made in May 2022, was obviously not included in Plaintiff's April 2022 EEOC charge, and therefore has not been administratively exhausted. Furthermore, there is no evidence that this complaint led to any legally cognizable adverse action; Defendant claims, and Plaintiff does not deny, that both employees were merely counseled to "stay away from each other." Akers Decl., ¶ 12.

Apart from this complaint, Defendant has testified, and Plaintiff failed to provide evidence disputing, that OMA was aware of only a single reporting of alleged discriminatory conduct that Plaintiff claims to have made: the anonymous letter, dated March 1, 2021. Akers Decl., ¶¶ 12-16 ("To be clear, we never received any complaints from Mr. Chandler regarding race. . . . OMA did

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1    not receive any complaints (informal or otherwise) from Mr. Chandler regarding any of these

2    incidents."). The Court has already determined that there is insufficient evidence in the record

3    supporting Plaintiff's bald assertion that OMA would have known that Plaintiff was associated

4    with the March 2021 letter; it was not signed by him; it does not refer to him by name; and it does

5    not articulate any specific incidents by which OMA might have identified Plaintiff specifically.

6    Defendant has denied it was aware Plaintiff was associated with the complaint, and Plaintiff has

7    not provided any evidence to the contrary. Akers Decl., ¶ 16. Plaintiff's retaliation claim is also

8    dismissed.

9        **D.  Hostile Work Environment Claims**

10       Establishing a prima facie case for a hostile work environment under either Title VII or

11   the Washington Law Against Discrimination requires a plaintiff to demonstrate: (1) he was

12   subjected to verbal or physical conduct because of his membership in a protected class; (2) the

13   conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

14   conditions of the plaintiff's employment and create an abusive work environment. *Vasquez v.*

15   *Cnty. of Los Angeles,* 349 F.3d 634, 642 (9th Cir. 2003); *see also* RCW Chapter 49.60;

16   *Loeffelholz v. Univ. of Wash.,* 175 Wn.2d 264, 265 (2012). A plaintiff must also establish that

17   harassing conduct committed by third parties can be imputed to the defendant. *Fried v. Wynn Las*

18   *Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021); *see also Estevez v. Fac. Club of Univ. of*

19   *Washington*, 129 Wn. App. 774, 795 (2005) (hostile work environment claim under the WLAD

20   requires a showing that the employer "(a) authorized, knew, or should have known of the

21   harassment, and (b) failed to take reasonably prompt and adequate corrective action.'").

22       In support of his hostile work environment claim, Plaintiff has alleged only two incidents

23

24   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT

25    - 13

that were discernably motivated by racial animus.[7] One is the August 2021 meeting with Cobun and Lingley, discussed above, in which Cobun is alleged to have used obscene racial epithets and cruel and demeaning language, allegedly berating Plaintiff for 45 minutes. *See supra*, §§ II.A.&B. Plaintiff testifies—albeit without any supporting documentation or other evidentiary support— that the meeting with Cobun left him "disabled for two months diagnosed with extreme PTSD and major depression." Chandler Decl., ¶ 12. Plaintiff also alleges that in December 2021, fellow employee Nathan Husser called him a "'stupid fucking nigger' and threatened to kick his ass." Compl., ¶ 24.

Defendant argues that these incidents, even if proven, are not enough to create a hostile work environment. Without deciding this question, the Court grants Defendant's motion on the grounds that Plaintiff has failed provide evidence that this is conduct for which OMA, the employer, can be held liable. "In general, an employer is vicariously liable for a hostile environment created by a supervisor." *Nichols v. Azteca Rest. Enterprises, Inc.,* 256 F.3d 864, 877 (9th Cir. 2001) (citing *Faragher,* 524 U.S. at 780).[8] However, liability is subject to a two-pronged

---

[7] Plaintiff alleges several other incidents, none of which he has tied to any racial animus, which will therefore not be considered as part of this claim. *See, e.g., Henry v. Regents of the Univ. of California,* 37 F. Supp. 3d 1067, 1072 (N.D. Cal. 2014), *aff'd,* 644 F. App'x 787 (9th Cir. 2016) (dismissing hostile work environment claim on summary judgment where "there are no facts, other than plaintiff's speculation, that any of these [allegedly harassing] incidents were motivated by racial animus on the part of [plaintiff's supervisor]. The one race-related comment attributable to [plaintiff's supervisor, that he was "not going to let a black man manage anybody,"] along with his responsibility for leaving a noose in the workplace do not serve to render every interaction between him and plaintiff evidence of race-based harassment").

[8] The Court will assume, without deciding, that Cobun is a "manager" for purposes of Plaintiff's hostile work environment claim. Although OMA disputes this (*see, e.g.,* O'Young Decl.,¶ 4 ("Mr. Cobun was a trucking supervisor. . . . He was not a manager.")), the Court believes a reasonable jury could find that Cobun's title of "General Manager," and the managerial authority he apparently exercised with respect to at least some of Chandler's conditions of employment (e.g., authority to make truck assignments, to administer driving tests, and to conduct disciplinary/training meetings), placed him in the role of "supervisor" for purposes of imputing his actions to the Defendant. *See* Cobun Decl., ¶¶ 2, 7. It is undisputed that Husser is not a "supervisor" for purposes of imputing his actions to OMA. Again, Plaintiff has not provided anything other than conclusory, unsupported, and generalized statements that he reported Husser's actions to anyone with supervisory authority at the company, or provided

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

affirmative defense, and an employer will not be liable if it can show: (1) "that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior"; and (2) "that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

Here, Defendant has provided undisputed evidence of the reasonable care it has taken to prevent harassment in the workplace. According to Brandon Akers, OMA's Vice President, "OMA has published anti-harassment, non-discrimination and anti-retaliation policies with a complaint mechanism in its Handbook." Akers Decl., ¶ 4; Ex. B. The policy "forbids discrimination based upon those protected rights in the workplace," stating the employee has "the right to work in an environment that is free of such discrimination and harassment." OMA Employee Handbook, Akers Decl., Ex. B. The policy directs employees subjected to such harassment to report the behavior "directly" to OMA's owner Barry O'Young, and promises prompt investigation, appropriate action, and protection from retaliation for filing complaints or reports. *Id.* Chandler has testified that he was aware of OMA's policy against discrimination and harassment and that OMA "directs employees to report any discrimination or harassment." Chandler Dep., 172; *see also id.* at 173 (Q. "do you realize that O.M.A. has an open door policy, that if you have any concerns, you can go to [OMA owner] Barry [O'Young]?" A. Yes."). This is sufficient for demonstrating that OMA "exercised reasonable care to prevent" harassment in its workplace. *Nichols,* 256 F.3d at 877 (Where employer had a "written antiharassment policy that:

---

evidence or even argument that OMA was or should have been aware of those actions. Thus nothing in the record supports holding OMA liable for the alleged actions of Plaintiff's fellow employee. *See Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991) ("With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.") (citing 29 C.F.R. § 1604.11(d)).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

(1) defined sexual harassment; (2) set forth a reporting procedure; (3) stated that employees who violate the policy will be disciplined; and (4) assured employees that no reprisals would be made against them "solely for making a complaint of sexual harassment," and employee was aware of that policy, employer took reasonable care in preventing harassment.).

As to the second prong of the affirmative defense, the record demonstrates conclusively that Chandler failed to take advantage of OMA's "preventive or corrective opportunities." OMA's vice president Brandon Akers has testified that "OMA did not receive any complaints (informal or otherwise) from Mr. Chandler regarding any of these incidents" of alleged racial harassment, and Chandler concedes he did not report the alleged incidents of racially motivated harassment. *Id.*, ¶ 14; Chandler Dep. 172-72 ("Q. The question is did you go to Barry? A. No, I did not go to Barry."). In an attempt to excuse this failure, Chandler argues that O'Young's office was "behind two electric locking doors that have to be buzzed open in order for you to enter," and that O'Young's telephone number is "printed nowhere in any O.M.A. documents provided to employees." Chandler Decl., ¶¶ 14, 15. These excuses fail to raise an issue of fact as to whether Chandler was able to report the alleged incidents of harassment as directed in the employee handbook, particularly where the evidence shows that the "front desk office manager is onsite every day from 8:00am a.m. until 4:00 p.m." and "buzzes in visitors and drivers regularly"; and the OMA "company website (https://omaconstruction.com) includes the main phone number" through which O'Young can be reached. Akers Supp. Decl., ¶¶ 3, 4. "[A]n employee's failure to use a complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense." *Nichols*, 256 F.3d at 877.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 16

1    Accordingly, Plaintiff's hostile work environment claims against OMA are also dismissed.[9]

2    ### E.  State-law Contract and Outrage Claims

3    Plaintiff has asserted common law claims for intentional and negligent infliction of

4    emotional distress. Compl., ¶ 29, 31, 35. He concedes that these claims are based on the same set

5    of facts alleged in support of his Title VII and WLAD discrimination claims. Chandler Dep., at

6    447. "Because the factual basis for Plaintiff's [intentional and negligent infliction of emotional

7    distress] claims is the same as [his] WLAD hostile work environment and retaliation claims, [his]

8    avenue for recovery is limited to [his] WLAD claims." *Arthur v. Whitman Cnty*., 24 F. Supp. 3d

9    1024, 1034 (E.D. Wash. 2014) (citing *Haubry v. Snow*, 106 Wn. App. 666, 678 (2001)).

10   Plaintiff's common-law emotional distress claims must therefore be dismissed.

11   Finally, Defendant has moved for dismissal of Plaintiff's claims for breach of contract,

12   both express and implied. In response, Plaintiff fails to lay out any of the elements of either claim,

13   to produce evidence in support of those elements, or to argue that he has met them. Indeed,

14   Plaintiff fails even to address the express contract claim and, as to the implied contract claim,

15   states only that the "implied agreement of the parties was that the employer would not acquiesce

16   in or condone a hostile work environment," an utterly insufficient response to Defendant's

17   motion. Pl.'s Opp. at 17. Accordingly, the Court concludes that Plaintiff's total failure to respond

18   to Defendant's request for judgment on the contract claims is tantamount to an abandonment of

19   these claims. Defendant's motion for judgment on the breach of express and implied contract

20   claims is granted as well, and these claims are dismissed.

21

22   [9] A hostile work environment claim brought under the WLAD "substantially parallels Title VII." *Estevez v. Fac. Club of Univ. of Washington*, 129 Wn. App. 774, 795 (2005) (citation omitted). The Court's analysis above as to Plaintiff's Title VII claim applies equally to his state-law claim, which is therefore also dismissed.

23

24   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Complaint is dismissed.

DATED this 10th day of May, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 18